JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON
Ashley Bannon Moore, OBS No. 113219
Senior Assistant County Attorney
Multnomah County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214
Telephone: (503) 988-3138
Facsimile: (503) 988-3377
E-mail: ashley.bannon.moore@multco.us
        *Of Attorneys for Multnomah County*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JAMES JACKSON, III, | Civil Case No. 3:24-CV-00771-YY |
| Plaintiff, | |
| v. | **DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY JUDGMENT** |
| MULTNOMAH COUNTY, | |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

Page 1 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
        JUDGMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS .................................................................................................. 2

TABLE OF AUTHORITIES ........................................................................................... 3

CERTIFICATE PURSUANT TO LOCAL RULE 7-1 .................................................... 5

MOTION ......................................................................................................................... 5

INTRODUCTION ........................................................................................................... 6

STATEMENT OF MATERIAL FACTS ......................................................................... 7

STANDARDS FOR MOTION FOR SUMMARY JUDGMENT ................................. 16

I.    All of Plaintiff's Discrimination Claims Under Title VII and the ADEA Must Be Dismissed ................................................................................................................... 17

    A.    Plaintiff's Protected Class ................................................................... 21

    B.    Plaintiff's Job Performance ................................................................ 21

    C.    Plaintiff's Workplace Complaints As Adverse Employment Actions. No Evidence of Discriminatory Motive. ................................................................. 21

        1.    Denial of Telework .................................................................... 22

        2.    "Open Door Policy" ................................................................... 22

        3.    Carrying a Caseload .................................................................. 23

        4.    Training ...................................................................................... 24

        5.    Performance Improvement Plan (PIP) ...................................... 24

        6.    End of Plaintiff's Employment .................................................. 25

    D.    Plaintiff's Title VII and ADEA Retaliation Claims Must Be Dismissed ................ 25

        1.    Protected Activity ...................................................................... 26

        2.    Adverse Employment Actions ................................................... 27

            a.    Performance Improvement Plan ......................................... 27

            b.    Plaintiff's Resignation ......................................................... 27

CONCLUSION .............................................................................................................. 27

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 17

*Brophy v. Day & Zimmerman Hawthorne Corp.* 799 F.Supp.2d 1185 (2011)............................ 25

*Butler v. City of Eugene.* 707 F.Supp.2d 1100 (2010)...................................................... 18, 19, 25

*Campbell v. Knife River Corp.--Nw.,* 783 F. Supp. 2d 1137 (D. Or. 2011) ................................ 20

*Campos v. Portland Public Schs.,* No. 99–1744–MA, 2000 U.S. Dist. Lexis 21617, at *16–17

    (D.Or. Nov. 9, 2000) ........................................................................................ 20

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .................... 16

*Chuang v. University of Cal. Davis, Bd. of Trustees,* 225 F.3d 1115 (9th Cir.2000).................. 19

*Committee v. Oregon State Univ.*, No. 6:16-CV-00962-MC, 2016 WL 4374945, at *2 (D. Or.

    Aug. 11, 2016)................................................................................................ 17

*Cornwell,* 439 F.3d at 1028................................................................................... 26

*Davis v. Team Elec. Co.,* 520 F.3d 1080 (9th Cir.2008).................................................... 19

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................................... 17

*Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 129 S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009)*. 20

*Hashimoto v. Dalton,* 118 F.3d 671 n. 1 (9th Cir.1997) ................................................. 26

*Kang v. U. Lim Am., Inc.,* 296 F.3d 810 (9th Cir.2002) .................................................. 19

*Kortan v. California Youth Auth.,* 217 F.3d 1104 (9th Cir.2000).......................................... 20

*Litmon v. Harris*, 768 F.3d 1237 (9th Cir. 2014)........................................................... 17

*Manatt v. Bank of Am., N.A.,* 339 F.3d 792 (9th Cir.2003) ............................................... 26

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

*McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S. Ct. § 1817, 36 L.Ed.2d 668 (1973) ... 18, 20

*Passer v. Am. Chem. Soc'y,* 935 F.2d 322 (D.C.Cir.1991) ........................................................... 26

*Pearson v. Reynolds School Dist. No. 7*, 998 F.Supp.2d 1004 (2014) .................................. 25, 26

*Shelley v. Green*, 666 F.3d 599 (2012) ...................................................................................... 20

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S. Ct. 2742, 2750, 125 L. Ed. 2d 407 (1993) 17

*Western Mining Council v. Watt*, 643 F.2d 618 (9th Cir. 1981) .................................................. 17

**Statutes**

29 U.S.C. § 623 (a)(1) ................................................................................................................ 20

42 U.S.C. § 2000e–2(a)(1) ........................................................................................................ 17

Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 .......................... passim

Fed. R. Civ. P. 56 (c) ................................................................................................................. 17

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-1 ............................. passim

**Rules**

Fed. R. Civ. P. 56 ................................................................................................................. 5, 16

Local Rule 7-1 ............................................................................................................................ 5

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

## CERTIFICATE PURSUANT TO LOCAL RULE 7-1

Pursuant to Local Rule 7-1, counsel for Defendant and Pro Se Plaintiff conferred on Defendant's Motion for Summary Judgment. Defendant's Counsel articulated what are believed to be Plaintiff's claims, which include: Title VII race discrimination, Title VII retaliation, Title VII gender discrimination, Age Discrimination in Employment Act ("ADEA") age discrimination and ADEA retaliation. Defendant conferred on each of Plaintiff's claims and should the Court grant Defendant's motion on each claim, Plaintiff's lawsuit would be dismissed in its entirety. The parties were unable to resolve the remaining issues raised in this Motion.

## MOTION

Pursuant to Fed. R. Civ. P. 56, the County moves this Court for an entry of an order granting summary judgment in favor of County on Plaintiff's claims as follows:

1. Plaintiff's First Claim for Relief for Title VII race discrimination must be dismissed because there is no evidence of causation between any adverse employment action and Plaintiff's race.
2. Plaintiff's Second Claim for Relief for Title VII gender discrimination must be dismissed because there is no evidence of causation between any adverse employment action and Plaintiff's gender.
3. Plaintiff's Third Claim for Relief ADEA age discrimination must be dismissed because there is no evidence of causation between any adverse employment action and Plaintiff's age.
4. Plaintiff's Fourth Claim for Relief for Title VII retaliation must be dismissed because there is no evidence of causation between any adverse employment action and Plaintiff engaging in a protected activity under Title VII.
5. Plaintiff's Fifth Claim for Relief ADEA retaliation must be dismissed because there is no evidence of causation between any adverse employment action and Plaintiff engaging in a protected activity under the ADEA.

This Motion is supported by the points and authorities contained in the Memorandum below, supporting declarations, and the prior court record.

Page 5 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
    JUDGMENT

## INTRODUCTION

James Jackson, III (hereinafter "Plaintiff") was an employee with Multnomah County ("County") for approximately twenty years, beginning in 2002, working with juveniles in the County's juvenile detention center. In 2022, Plaintiff applied for, and was hired into, an entirely new County department where he managed Parole and Probation Officers. From the beginning, it was clear that Plaintiff's skill set of working with juveniles was not entirely transferable to his new role wherein he was working with adults. As Plaintiff struggled in his new role, it became apparent that Plaintiff was not used to, nor did he appreciate, having to receive constructive feedback. Plaintiff quickly associated attempts by his supervisor to aid in his training as unfounded and unsubstantiated claims of race, gender and age discrimination. As Plaintiff's struggles grew and became apparent to more individuals, so did Plaintiff's allegations that numerous County employees, and even employees at the state-operated police academy, were engaged in discriminatory and retaliatory conduct.

As demonstrated through the undisputed record, Plaintiff takes little to no responsibility for his performance struggles. Plaintiff's entire case of race, gender and age discrimination and retaliation hinges on Plaintiff's own subjective belief that his performance struggles were related to illegitimate and illegal discriminatory and retaliatory reasons despite no evidence to support his belief. Plaintiff blames the County's training of him and alleges it is biased towards juvenile justice workers for his struggle to perform — these of course are not protected characteristics or activities that support Plaintiff's lawsuit.

Ultimately, Plaintiff's employment with the County ended when Plaintiff resigned after his supervisor presented him with a Performance Improvement Plan ("PIP") that was intended to

Page 6 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
      JUDGMENT

aid Plaintiff in meeting basic state training requirements mandated for those in Plaintiff's position. Plaintiff refused to look at the PIP and instead, resigned his position. At the urging of Human Resources, Plaintiff took time to reconsider his resignation, before once again resigning his position in writing.

As further outlined, in this motion, Plaintiff's claims of discrimination and retaliation are not based on evidence, but on his own unfounded subjective belief. There is no genuine issue of material fact supporting any of Plaintiff's claims and, as such, Plaintiff's lawsuit should be dismissed in its entirety.

## STATEMENT OF MATERIAL FACTS[1]

Plaintiff is a Black male. (James Jackson Deposition Transcript ("Jackson Depo.") 124:18- 125:5) At all relevant times, Plaintiff was in his early 50s (Jackson Depo. 6:17-22). Plaintiff was employed by the County for approximately twenty-one years. (Jackson Depo. 20:11-15). Most of Plaintiff's career with the County involved Plaintiff working with justice-involved youth in the juvenile department. (Jackson Depo. 10:13-22). In 2022, Plaintiff applied for, and was hired into, a position as a sworn parole and probation community justice manager ("SCJM") in the Adult Services Division ("ASD"). (Jackson Depo. 20:11-15). This position was in an entirely different County department from where Plaintiff was previously working, with adults instead of juveniles. (Jackson Depo. 20:23-21:11).

Plaintiff previously had worked as a manager in the juvenile department; however, the basic responsibilities of parole and probation officers, those he would be supervising, were

---

[1] Defendant does not stipulate to Plaintiff's version of the facts. However, given the summary judgment standard Defendant has deferred to Plaintiff's version of events recognizing the Court's obligation to construe facts in the light most favorable to Plaintiff.

Page 7 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
      JUDGMENT

entirely new to Plaintiff. *Id.* In his prior position, Plaintiff was required to be corrections-certified; however, it did *not require* him to be certified as a parole/probation officer. (Declaration of Jamie Tynan ("Tynan Dec.") ¶ 6). SCJM's *are required* to be certified through the State of Oregon as sworn officers. Which means individuals employed in those positions must attend and successfully complete course work at the Department of Public Safety Standards and Training ("DPSST") (also known as "the academy") and complete a field training manual. SCJM's have twelve (12) months to attend the academy and eighteen (18) months to complete the field training manual to complete DPPST requirements. (Tynan Dec. ¶ 5 ). In his new role as a SCJM, Plaintiff was required to complete the DPSST academy and requirements.

From November 2022, when Plaintiff started in his position as an SCJM, to February 2023, when he attended the police academy, he had no issues with anyone at the County. (Jackson Depo. 22:23-23:5; 29:8-30:5). However, issues began in February 2023, when Plaintiff attended the police academy for approximately eight (8) weeks. (Jackson Depo. 23:15-25; 30:2-10). The academy is run by the state of Oregon. (Jackson Depo. 31:1-4). Plaintiff struggled at the police academy and, subsequently, upon returning to the County, he struggled to hit the requisite benchmarks required in the field training manual.

Plaintiff also struggled to meet basic requirements while at the police academy, as documented by numerous State DPSST employees:

1.     On March 10, 2023, Brie Murphy from DPSST documented that Plaintiff "did not complete the report writing exercise. James did not include any of the benchmarks necessary for completion of report writing." (Declaration of Ashley Bannon Moore ("ABM Dec.") ¶ 4 - **Exhibit 3** - 23.03.10 Murphy Deficiency Report).

Page 8 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
          JUDGMENT

2.      On March 24, 2023, Noel Aher from DPSST documented that Plaintiff "attempted the fifth of five classification attempts and was unsuccessful in achieving a passing score." (ABM Dec. ¶ 5; **Exhibit 4** - 23.03.24 Aher Deficiency Report).

3.      On June 20, 2023, a Mandated Course Training Roster report was generated from DPSST listing individuals who "passed" and individuals whose status was "incomplete" for an Armored Parole and Probation requirement under ORS 166.263. Plaintiff was among the individuals with an "incomplete" status. (ABM Dec. ¶ 6; **Exhibit 5** – 23.06.20 Mandated Course Training - Incomplete).

4.      DPSST Evaluator A. Rexford did not pass Jackson due to numerous deficiencies in his Final Project Evaluation. (ABM Dec. ¶ 7; **Exhibit 6** – Final Project Report - No Pass).

Despite these challenges at the academy, Mr. Jackson successfully graduated from the DPSST training program at the academy on March 10, 2023. (Tynan Dec. ¶ 7).

Jamie Tynan ("Tynan") managed Plaintiff when he started as an SCJM in November 2022 and continued to supervise him after he returned from the academy. (Jackson Depo. 23:6 – 10; Tynan Dec. ¶ 4). Plaintiff describes his relationship with Tynan as starting out "pleasant" for a few months prior to Plaintiff going to the academy. (Jackson Depo. 22:23-23:5). "Once [he] went to the academy, there was a shift." *Id.* Plaintiff first took issue with Tynan because she never visited Plaintiff while at the academy. (Jackson Depo. 50:1-53:6). Tynan attended Plaintiff's graduation. (Tynan Dec. ¶ 8).

Plaintiff's concerns about Tynan only continued when he returned from the academy. Plaintiff claims that Tynan failed to allow Plaintiff to telework, but allowed everyone else to telework (Jackson Depo 56:24 - 57:23; 60:4-22). Plaintiff made a "general ask" about telework

Page 9 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
              JUDGMENT

and Tynan stated that general telework was not permitted in Plaintiff's position. (Jackson Depo. 60:4-22; 64:14-65:5). However, Plaintiff testified that another SCJM was permitted to telework for one off occasions such as a kitchen remodel or an issue with his dog having surgery. Plaintiff never made a telework ask for any specific one off scenario. (Jackson Depo 64:14-65:5). The SCJM role requires being in the office to supervise staff as ASD is open to the public during business hours. (Tynan Dec. ¶ 9). Tynan does not allow any SCJM to telework as a general rule. *Id*. Telework is allowed by request and on an infrequent and unscheduled basis. *Id.*. Had Plaintiff needed to telework for an occasion, Tynan would have afforded Plaintiff the same courtesy she provided the other SCJM's based on her consideration of the circumstances. *Id.*

Moreover, Plaintiff testified that Tynan treated him differently when she required him to keep his office door open. However, Tynan wrote in Plaintiff's Performance Review that the department had "an open door policy" but that this did not prohibit Plaintiff from closing his physical office door when needed. (Jackson Depo. 70:23-71:18; Tynan Dec ¶ 10; ABM Dec. ¶ 8; **Exhibit 7** - James Jackson's Performance Review - "Open Door Policy"). Tynan never required Plaintiff to keep his office door open. Rather, she explained to him that the department as a whole had an "open door policy," and that this was different from prohibiting managers from closing their physical doors. (Tynan Dec. ¶ 10).

Further, Plaintiff alleges that Tynan treated him differently in his training. When Plaintiff returned from the academy - Tynan did not have a structured training plan for Plaintiff. (Tynan Dec. ¶ 11). Rather, Plaintiff was assigned to trainers which has been typical for the department. *Id*. Prior to Plaintiff attending the academy, Tynan assigned SCJM Bryan Smith ("SCJM Smith") to work with Plaintiff and he continued to do so upon Plaintiff's return from the academy.

Page 10 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
        JUDGMENT

(Tynan Dec. ¶ 12; Jackson Depo. 24:18-25:14). Tynan expected Plaintiff to utilize SCJM Smith to complete his field training manual and to seek guidance from Tynan when he had questions. (Tynan Dec. ¶ 12). As a manager, Tynan expected Plaintiff to take initiative, use the resources available to him, ask colleagues colleagues to aid in learning his role and completing the required field training manual and work toward completion of the State-required field training manual. At the time, Tynan believed Plaintiff would be successful in completing the DPSST requirements without formal training in light of the experience Plaintiff had in his prior manager role. (Tynan Dec. ¶ 14).

Plaintiff was assigned a small caseload. (Tynan Dec. ¶ 13). The caseload was assigned at the suggestion of SCJM Smith who was training Plaintiff. (Tynan Dec. ¶ 13; Jackson Depo. 77:24-78:9). SCJM Smith never engaged in any retaliatory or discriminatory conduct towards Plaintiff. (Jackson Depo. 28:11-16). The purpose of assigning Plaintiff a small caseload was to provide him an opportunity to learn the job duties and responsibilities of those whom he was managing. (Tynan Dec ¶ 13).

In addition to Tynan, Plaintiff also believed other individuals were discriminating against him. For example, Plaintiff met Ken Yee ("Yee") during his meet and greet onboarding. (Jackson Depo. 84:4-13). Plaintiff alleges he emailed Yee multiple times to schedule a firearms training at DPSST and that Yee ignored his emails. (Jackson Depo. 84:14-86:11).[1]

Further, Jay Burke ("Burke") was the survival skills trainer at the time. (Jackson Depo. 117:7-13). In April 2023, Burke emailed Plaintiff explaining there were two options for him to work on firearm fundamentals since Plaintiff did not obtain his firearm qualification at the

---

[1] Being "armed" not a requirement of Plaintiff's job. (Tynan Dec. ¶23).

Page 11 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
         JUDGMENT

academy. (ABM Dec. ¶ 9; **Exhibit 8** - 23.04.05 EM Burke to Jackson - Firearm Training Options). Notably, SCJMs are not required to have a firearms certification; however, if a SCJM wants to be armed, they must qualify at the academy. (Tynan Dec. ¶ 23). Plaintiff was allowed to either (1) meet with a survival skills instructor to the Place to Shoot and work on fundamentals with an instructor, or (2) attend Fundamental Friday's which were offered once a month on Friday mornings. (ABM Dec. ¶ 9; **Exhibit 8**) In September 2023, Burke emailed Plaintiff a second time regarding his options for training. (ABM Dec. ¶ 10; **Exhibit 9** - 23.09.05 EM Burke to Jackson - Firearms Training). Burke tells Plaintiff that he is not eligible for the practice shoot roster, but *again* tells Plaintiff he is eligible for (1) Fundamental Friday's at the range or (2) utilizing the Place to Shoot with an instructor. *Id.* Plaintiff alleges that there were two female employees that did not have the same process as him. (Jackson Depo. 86:24-88:7;117:14-25).

Plaintiff testified that he was discriminated against by Meghan Lee ("Lee"), another SCJM, whom he met in a SCJM group meeting. (Jackson Depo. 95:11-23). Plaintiff stated Lee asked Plaintiff to go out to lunch while he was at the academy. *Id.* Lee was then assigned to help Plaintiff with court reports after the academy. (Jackson Depo. 32:18-20). Plaintiff testified that "she basically flat-out refused to train [him] or show [him] how to do the reports until [he] had an opportunity to do an actual report. Then she would show [him]. But she also sent emails stating that she didn't feel comfortable, she didn't want to do it, and it never got done." (Jackson Depo. 32:18-25). Lee told Plaintiff "she was too new herself to the SCJM role, she didn't feel comfortable…" (Jackson Depo. 44:4-13). In July 2023, Lee emailed Plaintiff offering to help him with report writing and offering to go over the field training manual, but Plaintiff cancelled the meeting stating "we can table this until I have completed several reports…" (ABM Dec. ¶ 15;

Page 12 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
        JUDGMENT

**Exhibit 14** - 23.07.26 EM Lee and Jackson - Training).  In response, Lee stated "If you have any questions or feel like it would be helpful to walk through anything, I'm happy to do that. Just let me know." *Id.*

Plaintiff expressed concern to Tynan that he needed more training and so, Tynan started meeting with Plaintiff weekly to provide training and support. (Tynan Dec. ¶ 15). Plaintiff acknowledges his circumstances were unique when coming into the SCJM role because he had no prior experience with probation and parole officers.(Jackson Depo 73:10-75:12).

As the months passed, Plaintiff expressed concerns to Tynan that his field training manual was going slower than expected; however, most of his stated concerns centered around management of this team, which Tynan addressed with him. (Tynan Dec. ¶ 16). It became apparent to Tynan that Plaintiff needed significantly more support to complete his field training manual. (Tynan Dec. ¶ 16). In July 2023, Tynan reached out to numerous SCJMs, asking them each to take on the responsibility of training Plaintiff on different areas of the field training manual. (Jackson Depo. 81:24-82:8; ABM Dec. ¶ 11; **Exhibit 10** - 23.07.19 Email Tynan to Various SCJMs; Tynan Dec. ¶ 17).

Even with assigned SCJMs to aid Plaintiff in completing his training manual, Plaintiff still struggled. (Tynan Dec ¶ 18). Tynan believed either Plaintiff was not prioritizing his training or he lacked the skill set to successfully complete the required training manual. *Id.* While Tynan continued to encourage Plaintiff, she also expressed concerns throughout her time training Plaintiff regarding his lack of progress. (Tynan Dec. ¶ 19). Plaintiff expressed concerns about Tynan's training style and she asked that he provide open feedback to allow her to flex her training to meet his needs and, if she was unable to, she could get another trainer to assist. (*id.*).

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

Tynan also asked Plaintiff to be curious and ask questions, if he is not understanding something. (*id.*). At the time Plaintiff left his employment he had only completed about 20% of the field training manual. (Jackson Depo. 83:4-22).

As Tynan's performance concerns mounted, so did Plaintiff's pressure to perform. On August 27, 2023, Plaintiff emailed Shawntia Otero ("Otero") in human resources asking that Tynan be removed as his supervisor. The email stated Plaintiff believed that Tynan was engaged in discriminatory conduct. Specifically, the email stated "As a 51 year-old black male manager, I can recognize inappropriate, disrespectful, discriminatory and racist behaviors." (ABM Dec. ¶ 12; **Exhibit 11** - EM correspondence between Otero and Plaintiff - Complaint/Response). The email went on to outline twelve different situations that Plaintiff was concerned with - they are summarized as follows:

1.  Tynan interrupted a meeting with him and another black male employee;

2.  There was a delay in implementing a formal training plan;

3.  Plaintiff was told to keep his office door open;

4.  Plaintiff had issues scheduling a firearms training;

5.  Tynan provided feedback to Plaintiff on his style of communicating with his direct reports and Tynan communicated directly with Plaintiff's reports;

6.  Tynan provided feedback on allowing Plaintiff's direct reports to telework;

7.  Tynan asked Plaintiff to wear business casual attire instead of field gear;

8.  Tynan made a joke about being a parole and probation officer because "We can't do math and that's why we are here.";

9.  Tynan denied Plaintiff's general ask to telework;

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

10.     A male colleague told Plaintiff that the adult service division was a "white supremacist organization";

11.     Tynan told Plaintiff in field work Plaintiff's reports would come and go; and

12.     Plaintiff did not receive a "peace badge" until 5 months after starting his employment. *Id.*

Otero responded to Plaintiff's email—acknowledging that the email raised issues of potential protected class complaints and asked Plaintiff about following up on his concerns and providing notice to the department director, Jay Scroggin ("Scroggin"). (ABM Dec. ¶ 12, **Exhibit 11**). Plaintiff responded, asking that Otero keep the complaints confidential and asking that she not notify Scroggin. Otero complied and neither Tynan nor Scroggin were made aware of Plaintiff's complaints at any time during Plaintiff's employment. (Deposition of Shawntia Otero 34:1-39:13; Tynan Dec. ¶ 24).

In October 2023, Tynan decided to implement a Performance Improvement Plan ("PIP"). (Tynan Dec. ¶ 20). The PIP was implemented so that Plaintiff clearly understood the urgency of completing the DPSST requirements and to ensure Plaintiff could get the support he needed for those specific requirements. *Id.*

On November 1, 2023, Tynan went into Plaintiff's office and began to present the PIP to Plaintiff. (Tynan Dec. ¶ 21). Plaintiff refused to take the document and refused to listen to Tynan, who was explaining to him the purpose of the PIP. *Id.* Plaintiff became agitated, asked Tynan to contact human resources, and told her he was resigning. *Id.* At that point, Tynan called Patty Blanchard in human resources—who, over the phone, told Plaintiff that he should take the day to think about his decision to resign. *Id.* Plaintiff left the office in a very disruptive manner—

Page 15 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
                JUDGMENT

yelling at individuals that he had been terminated. *Id.* Numerous individuals reported Plaintiff's inappropriate conduct to Tynan. (Tynan Dec ¶ 22).

The following day, Plaintiff called out sick. (Jackson Depo. 103:16-104:16). Scoggin called Plaintiff after hearing about the "upheaval at the office." *Id.* Plaintiff said he was taking a sick day and asked to talk to Scroggin the following day. *Id.* The following day, Scroggin and Patty Blanchard (human resources) called Plaintiff. Plaintiff does not recall much of the conversation except that he reported feeling bullied and that Scroggin would not agree to remove Tynan as Plaintiff's supervisor or remove the PIP. *Id.* On November 3, 2023, the County received an email from Plaintiff wherein he stated he was resigning his employment. (ABM Dec.¶ 13; **Exhibit 12** - Email correspondence Jackson to HR). Plaintiff subsequently filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), swearing under penalty of perjury that he "did not resign." (ABM Dec ¶ 14; **Exhibit 13** - EEOC Complaint). At the time of Plaintiff's deposition, and despite being shown both on the EEOC complaint and his resignation email—Plaintiff reported having no recollection of how his employment with the County ended. (Jackson Depo. 169:14-171:6).

## STANDARDS FOR MOTION FOR SUMMARY JUDGMENT

The court shall grant summary judgment if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and providing evidence in support of its motion that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Page 16 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
        JUDGMENT

If the movant satisfies the initial burden, the burden shifts to the opposing party, who "must present significant probative evidence tending to support its claim or defense." *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The non-moving party must satisfy its responsive burden by coming forward with sufficient evidence demonstrating to the court that there are genuine issues of material fact to be decided at trial. Fed. R. Civ. P. 56 (c).

This Court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). The factual allegations in a complaint must present more than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the case of *pro se* litigants a court reviews pleadings under less stringent standards than it does for pleadings drafted by lawyers; the court views the complaint liberally but will not supplant vague and conclusory allegations. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014). *Committee v. Oregon State Univ.*, No. 6:16-CV-00962-MC, 2016 WL 4374945, at *2 (D. Or. Aug. 11, 2016).

## I. All of Plaintiff's Discrimination Claims Under Title VII and the ADEA Must Be Dismissed

Title VII renders it unlawful "for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 513, 113 S. Ct. 2742, 2750, 125 L. Ed. 2d 407 (1993).

To establish a claim of disparate treatment under Title VII, an employee must offer evidence that gives rise to an inference of unlawful discrimination. *Butler v. City of Eugene.* 707

Page 17 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
    JUDGMENT

F.Supp.2d 1100 (2010). A plaintiff must establish the following elements for a prima facie case: 1) he is a member of a protected class, 2) he was performing his job satisfactorily; (3) he was subjected to an adverse employment action; and 4) he was treated differently than others outside the protected class. *Butler* at 1102 (citations omitted). To prevail on a claim of disparate treatment in violation of Title VII, plaintiff must prove by a preponderance of the evidence that his protected class was the sole reason or a motivating factor for an adverse employment action. *Butler* at 1103. An individual suffers disparate treatment when he is treated less favorably than others similarly situated. *Butler* at 1103.

On summary judgment a plaintiff alleging Title VII violations may proceed under the framework set out in *McDonnell Douglas Corp v. Green*, 411 U.S. 792,802-804, 93 S. Ct. § 1817, 36 L.Ed.2d 668 (1973), or may simply produce sufficient evidence for the jury to determine by a preponderance of the evidence that a discriminatory reason motivated the employer. *Butler* at 1103.

Under the *McDonnell Douglas* framework, if a plaintiff makes out a prima facie case, defendant must then articulate a legitimate reason for the adverse employment action taken. Once a reason is articulated, the burden shifts again to plaintiff to show that the reason was pretextual *i.e.* that the reason is not the real reason and, ultimately, that the real determining reason for the adverse action is discrimination. *Butler* at 1103.

If a plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial. Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption. *Butler* at 1104. However, when direct evidence is unavailable, the

Page 18 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
             JUDGMENT

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

plaintiff may come forward with circumstantial evidence (indirect evidence) that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable. Such evidence of "pretense" must be "specific" and "substantial" in order to create a triable issue with respect to whether the employer intended to discriminate on an improper basis. To satisfy this burden, and survive summary judgment, plaintiff must produce enough evidence to allow a reasonable fact finder to conclude either (1) that the alleged reasons for the adverse employment actions/ decisions were false, or (2) that the true reasons for the adverse employment decisions were discriminatory ones. *Butler* at 1104.

The definition of an adverse employment action under a disparate treatment claim is narrower than under a retaliation claim. For the purposes of a discrimination claim, an adverse employment action is one which "materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.,* 520 F.3d 1080, 1089 (9th Cir.2008) (internal quotation, brackets, and ellipsis omitted); *see also Kang v. U. Lim Am., Inc.,* 296 F.3d 810, 818–19 (9th Cir.2002) (plaintiff established a prima facie case of disparate treatment where the defendant subjected the plaintiff to adverse employment actions including discriminatory overtime, and termination, "that constituted a material change in the terms and conditions of [the plaintiff's] employment") (internal quotation omitted); *Chuang v. University of Cal. Davis, Bd. of Trustees,* 225 F.3d 1115, 1126 (9th Cir.2000) (finding that "[t]he removal of or substantial interference with work facilities important to the performance of the job constitutes a material change in the terms and conditions of a person's employment" and therefore qualifies as an adverse employment action, but also finding that the employer's failure to respond to grievances did not amount to an adverse employment action because "it did not materially affect the

Page 19 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
            JUDGMENT

compensation, terms, conditions, or privileges of the [plaintiffs'] employment"); *Kortan v. California Youth Auth.,* 217 F.3d 1104, 1113 (9th Cir.2000) (no adverse employment action when the plaintiff was not demoted, not stripped of work responsibilities, not handed different or more burdensome work activities, not fired or suspended, not denied any raises, and not reduced in salary or any other benefit); *Campos v. Portland Public Schs.,* No. 99–1744–MA, 2000 U.S. Dist. Lexis 21617, at *16–17 (D.Or. Nov. 9, 2000) (no adverse employment action when plaintiff's job demotion was not accompanied by any salary or status change or any indication that her new position was less favorable). *See Campbell v. Knife River Corp.--Nw.,* 783 F. Supp. 2d 1137, 1149 (D. Or. 2011).

The Ninth Circuit applies the same Title VII burden-shifting evidentiary framework of *McDonnell Douglas*, 411 U.S. at 802, 93 <u>S.Ct.</u> 1817, to motions for summary judgment on ADEA claims. *Shelley v. Green*, 666 F.3d 599, 607 (2012). Under the ADEA, it is unlawful for an employer "to … discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623 (a)(1). The prohibition is "limited to individuals who are at least 40 years of age." *Shelley v. Green*, 666 F.3d 599, 607 (2012). To prevail on a claim for age discrimination under the ADEA, a plaintiff must prove at trial that age was the "but-for" cause of the employer's adverse action. *Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176, 129 S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009)*. "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Id.*

Page 20 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
        JUDGMENT

Since Plaintiff's claims under Title VII and the ADEA are subjected to the same burden shifting analysis at the summary judgment stage—the County analyzes the elements of both Plaintiff's Title VII and ADEA discrimination claims together.

### A.     Plaintiff's Protected Class

Under Title VII Plaintiff has established that he is a black male for purposes of his race and gender claims. Under the ADEA, Plaintiff has established that he was over forty (40 years) old at the time of alleged discrimination.

### B.     Plaintiff's Job Performance

The County disputes that Plaintiff was satisfactorily performing his job duties. However, given that the Court is required to view all evidence in the light most favorable to Plaintiff, the non-moving party, the County concedes this element for purposes of this motion only.

### C.     Plaintiff's Workplace Complaints As Adverse Employment Actions. No Evidence of Discriminatory Motive.

Plaintiff has a host of workplace grievances — some of which the County concedes fall under the legal definition of "adverse employment action" for purposes of Plaintiff's discrimination claims. However, many of Plaintiff's allegations do not meet the legal criteria to be an adverse employment action. The County has attempted to address legally cognizable adverse actions below, and reserves the right to reply to any additionally alleged adverse employment actions raised by Plaintiff in his Response. The County's motion is intended to move against Plaintiff's lawsuit in its entirety.

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

    1.  <u>Denial of Telework</u>

Plaintiff alleges that he suffered an adverse employment action when he was denied his general request to telework. It is undisputed that Plaintiff never asked to telework on a specific occasion or for a specific incident. The SCJM role requires being in the office to supervise staff as the building is open to the public during business hours and, as such, SCJMs are not allowed to telework as a general rule.

There is no direct evidence that Plaintiff was denied telework because of his age, race or gender. Further there is no evidence that any SCJM was granted general telework or that Plaintiff was treated differently than any other SCJM outside of one of his protected classes (age, race or gender). Although, Plaintiff testified that everyone else was able to telework and that other SCJM's were allowed to telework on occasion. There is no evidence that Plaintiff, who was denied a general telework request, was treated any differently than any other SCJM similarly situated to him, but outside of his protected classes.

Further, there is no evidence that calls into question the veracity of the County's reason for denying Plaintiff general telework. Moreover, there is no evidence in the record to allow a reasonable factfinder to conclude either: (a) that the alleged reason for the County's denial of telework request was false, or (b) that the true reason for the denial was a discriminatory one.

    2.  <u>"Open Door Policy"</u>

Plaintiff alleges that he suffered an adverse employment action when Tynan required him to leave his office door open. In Plaintiff's PPR he asked Tynan whether he was able to close his office door. Tynan responded (in writing) explaining that the departments "open door policy" did not prohibit Plaintiff from closing his physical office door when needed.

Page 22 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
        JUDGMENT

Plaintiff testified that despite this written response he was told verbally by Tynan his office door must remain open.

There is no direct evidence that Plaintiff was required to leave his door open because of his age, race or gender. Further, there is no evidence that Plaintiff was treated any differently than any other SCJM outside of his protected class (age, race or gender). Since there is no evidence that similarly situated individuals were treated differently than Plaintiff, there is also no evidence of pretext.

3. <u>Carrying a Caseload</u>

Plaintiff alleges he suffered an adverse employment action when he was told he needed to carry a small caseload upon returning from the academy. Plaintiff was being trained by SCJM Bryan Smith who suggested that Plaintiff carry a minimal caseload to aid in his training and in the completion of his field training manual. Plaintiff testified that he experienced no discrimination or retaliation from SCJM Smith. Tynan signed off on SCJM Smith's suggestion for a minimal caseload.

Prior to Plaintiff, there was one female SCJM assigned to supervise probation/parole officers immediately upon returning from the academy. She was not given a small caseload, but she was also *not* trained by SCJM Smith. This female SCJM was not similarly situated to Plaintiff,

There is no direct evidence that Plaintiff was provided a minimal caseload because of his age, race or gender. There is a single comparator of a female SCJM that was not assigned a caseload, prior to Plaintiff. However, that SCJM as not trained by SCJM Smith. There is no

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

evidence that Plaintiff was assigned a small caseload for any reason other than to aid in his training.

    4.  <u>Training</u>

Plaintiff alleges he suffered an adverse employment action based on his training in the SCJM role. SCJM Smith was assigned to train Plaintiff. In July 2023, Tynan reached out to numerous other SCJM's asking to provide Plaintiff with help meeting his field training manual requirements. Lee reached out to Plaintiff specifically about reporting. Burke provided options for Plaintiff's firearm training (although carrying a firearm was not a requirement of Plaintiff's position). Upon Plaintiff's request, Tynan met with Plaintiff weekly to aid in training.

There is no direct evidence that Plaintiff was trained a specific way because of his age, race, or gender. There is no indirect evidence that Plaintiff was trained any differently than any other SCJM similarly situated to Plaintiff. None of Plaintiff's gripes about the structure of his training plan, the access to trainers he had, or any other generalized complaint about his training suggests that Plaintiff was treated differently than others outside of his protected classes.

    5.  <u>Performance Improvement Plan (PIP)</u>

Plaintiff alleges that he was placed on a PIP because of his age, race or gender. Plaintiff was placed on a PIP to impress upon Plaintiff the urgency of completing the field training manual requirements, set expectations and provide support to Plaintiff. There is no direct evidence that Plaintiff was place on a PIP because of his age, race or gender. There is no indirect evidence that Plaintiff was placed on a PIP for any other reason than Plaintiff was struggling to meet the requirement of completing the field training manual.

Page 24 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
       JUDGMENT

6.  <u>End of Plaintiff's Employment</u>

Plaintiff alleges that his employment ended as a result of his age, race or gender. Plaintiff does not recall how his employment ended. The County has presented evidence that Plaintiff resigned from his employment —pursuant to the email he sent to Human Resources. There is no direct evidence that Plaintiff's employment ended as a result of his age, race or gender. There is no evidence that Plaintiff's employment ended for any other reason than Plaintiff voluntarily resigned.

**D.     Plaintiff's Title VII and ADEA Retaliation Claims Must Be Dismissed**

Under Title VII of the Civil Rights Act, an employer cannot retaliate against an employee for "oppos[ing] any practice made an unlawful employment practice by this subchapter." *Id.* §2000e-3(a). In order to establish a prima facie case of retaliation, plaintiff must show that he engaged in protected activity, that he was thereafter subjected by his employer to an adverse employment action, and that a causal link exists between the two. *Butler v. City of Eugene*, Or. 707 F.Supp.2d 1100, 1108 (2010).

An employee has engaged in a protected activity if the employee "(1) has opposed any practice made an unlawful employment practice by this subchapters; or (2) has made a charge, testified or participated in any manner in an investigation, proceeding, or hearing." *Brophy v. Day & Zimmerman Hawthorne Corp.* 799 F.Supp.2d 1185, 1199 (2011). An "adverse employment action" for purposes of a Title VII retaliation claim includes "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Pearson v. Reynolds School Dist. No. 7*, 998 F.Supp.2d 1004, 1023 (2014). "This type of 'material adversity' does not include, for example, 'petty

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

slights or minor annoyances that often take place at work and that all employees experience.'" *Pearson* at 1024 (citation omitted). The "reasonable employee" standard is an objective one that is "judicially administrable," avoiding "the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjection feelings." *Pearson* at 1024. Like the standard for evaluating a disparate treatment claim, once a plaintiff has made out a *prima facie* case of retaliation, "the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Devi,* 2013 WL 3479566 at *3 (citing, *inter alia, Cornwell,* 439 F.3d at 1028; *Manatt v. Bank of Am., N.A.,* 339 F.3d 792, 800 (9th Cir.2003)).

As in the discrimination analysis, "the ADEA anti-retaliation provision is 'parallel to the anti-retaliation provision contained in Title VII,' and ... 'cases interpreting the latter provision are frequently relied upon in interpreting the former.' " *Hashimoto v. Dalton,* 118 F.3d 671, 675 n. 1 (9th Cir.1997) (quoting *Passer v. Am. Chem. Soc'y,* 935 F.2d 322, 330 (D.C.Cir.1991)).

1. Protected Activity

Here, Plaintiff alleges that he engaged in a protected activity when on August 27, 2023 he emailed Shawntia Otero in human resources requesting a change in supervision. Within the request was the following sentence: "As a 51 year-old black male manager, I can recognize inappropriate, disrespectful, discriminatory and racist behaviors." The County does not contest for purposes of this motion, that Plaintiff engaged in a protected activity — invoking his age, race and gender.

Page 26 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
　　　　JUDGMENT

2. <u>Adverse Employment Actions</u>

a. Performance Improvement Plan

Plaintiff alleges that he suffered an adverse employment action when in November 2023, Plaintiff's supervisor Jamie Tynan placed Plaintiff on a PIP. Plaintiff alleges he was placed on the PIP as a result of his August 2023 email to Otero. The undisputed evidence is that Plaintiff requested that his email to Otero be kept confidential. Otero did not share Plaintiff's email with Tynan or Tynan's supervisor, Jay Scroggin. Tynan was unaware of Plaintiff's complaint at the time she placed Plaintiff on the PIP. Plaintiff was placed on the PIP to impress upon him the importance of completing his field training manual. There is no causal connection between Plaintiff's protected activity and Tynan's decision to place Plaintiff on a PIP. Plaintiff's retaliation claims under both Title VII and ADEA must be dismissed.

b. Plaintiff's Resignation

To the extent Plaintiff is alleging that he suffered an adverse employment action when his employment with the County ended —there is no evidence that the County terminated Plaintiff's employment. Plaintiff voluntarily resigned his employment in an email to HR on November 3, 2023. Plaintiff's retaliation claims under Title VII and the ADEA fail.

**<u>CONCLUSION</u>**

There is no evidence that Plaintiff experienced discrimination or retaliation. Although Plaintiff may believe that his age, race or gender impacted his employment with the County there is simply no evidence to support his belief. Simply put, Plaintiff struggled to meet the requirements of his new role. For all the reasons stated above, Plaintiff's lawsuit must be dismissed in its entirety.

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

For all the reasons set forth above, Plaintiff has not raised a genuine issue of material fact to support any of his claims and Defendant's Motion for Summary Judgment must be granted.

DATED this 12th day of January, 2026.

Respectfully submitted,

JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON

*/s/ Ashley Bannon Moore*

Ashley Bannon Moore, OSB No. 113219
Veronica R. Rodriguez, OSB No. 181818
Multnomah County Attorney's Office
   *Of Attorneys for Defendant Multnomah County*

Page 28 – DEFENDANT'S MULTNOMAH COUNTY'MOTION FOR SUMMARY
   JUDGMENT