UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

JAMES JACKSON, III,

        Plaintiff,

        Case No. 3:24-CV-00771-YY

    v.

MULTNOMAH COUNTY,

        OPINION AND ORDER

        Defendant.

Plaintiff James Jackson, III, who is representing himself in this case, brings this action against his former employer, Multnomah County, alleging discrimination based on race, color, gender, and age in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Compl. 3, 5, ECF 1. Currently pending is defendant's Motion for Summary Judgment (ECF 32). For the reasons explained below, the motion is granted and this case is dismissed.

## I.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of

1 – OPINION AND ORDER

the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citing Fed. R. Civ. P. 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id*. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id*. at 248-49. A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu*, 198 F.3d at 1134 (citation omitted).

Federal courts hold a *pro se* litigant's pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987); *see Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (*per curiam*) (recognizing a document filed *pro se* "is to be liberally construed"; a plaintiff need only give the defendant fair notice of the claim and the grounds on which it rests) (citation omitted). "However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially

2 – OPINION AND ORDER

pled." *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). In addition, *pro se* pleadings may not receive the benefit of every conceivable doubt, but only to reasonable factual inferences in the plaintiff's favor. *McKinney v. De Bord*, 507 F.2d 501, 504 (9th Cir. 1974).

## II.    Factual Background

In November 2022, plaintiff began a new role as a Sworn Community Justice Manager ("SCJM") in the Adult Services Division. Moore Decl., Ex. 1 ("Jackson Dep.") at 20-21, ECF 34-1. This position required plaintiff to be certified as a sworn officer through the State of Oregon, which meant he needed to finish course work at the Department of Public Safety and Training ("DPSST") and complete a field training manual. Tynan Decl. ¶ 5, ECF 33. Plaintiff successfully completed the DPSST training, but he struggled to make progress with the field training manual. *Id.* ¶¶ 16, 18. He expressed concerns about his progress to his supervisor, Jamie Tynan. *Id.* ¶ 15. In his performance evaluation, he stated a desire for "adequate and timely training to ensure that [he is] able to fulfill [his] work responsibilities as a new sworn parole and probation manager[.]" Pl.'s Resp.[1], Ex. 2 at 2, ECF 35-2. Tynan agreed, committing to weekly meetings with plaintiff and encouraging him to "seek out additional training." *Id.* Subsequently, Tynan emailed other SCJMs to request their assistance in training and coaching plaintiff. Moore Decl., Ex 10, ECF 34-10. Tynan also assigned specific SCJM trainers for each module that plaintiff needed to complete. Pl.'s Resp., Ex. 24, ECF 35-24.

Despite these efforts, plaintiff continued to struggle. He completed only about 20 percent of his field training manual by the end of his employment. Jackson Dep. 84, ECF 34-1. His discontentment towards Tynan also grew, and in late August 2023, he emailed Human Resources

---

[1] Although plaintiff did not submit his exhibits through a sworn declaration, given his *pro se* status and the absence of disputes regarding the exhibits, the court treats them as properly submitted.

("HR") to request a change in supervisor. Moore Decl., Ex. 11 at 1, ECF 34-11. Plaintiff

complained about Tynan's "[l]ack of preparation, indifference, [and] inept training and

onboarding[.]" *Id.* He listed twelve instances demonstrating Tynan's alleged bias, her lack of

preparation, and systematic and racist problems in the department. *Id.* at 2-4. HR advised

plaintiff to contact his Division Director, Jay Scroggin, to request a supervisor change and asked

plaintiff if he wanted to "file a formal complaint[.]" *Id.* at 4. Plaintiff stated he needed time to

think about it. *Id.* at 5-6. Plaintiff never reached out to Scroggin to request a change in

supervisor. But two months later, plaintiff filed a formal complaint with the Complaints

Investigation Unit ("CIU"), alleging he had "been targeted and bullied, due to [his] age and

race." Pl.'s Resp., Ex. 6 at 1, ECF 35-6. Plaintiff reiterated that "[he] does not believe that

[Tynan] can supervise [him] moving forward." *Id.* He also relisted the twelve instances from his

HR complaint. *Id.* at 2-3.

Several days after the CIU complaint, on November 1, 2023, Tynan presented plaintiff

with a Performance Improvement Plan ("PIP"). Tynan Decl. ¶ 21, ECF 33. Plaintiff refused the

PIP, threatened to resign, and then left the office. *Id.* Later that afternoon, he emailed Central

Payroll to inquire about his final paycheck, stating "[he] might resign tomorrow morning."

Moore Decl., Ex. 12[2] at 2, ECF 34-12. Two days later, plaintiff informed Central Payroll, "I

resigned from my position this morning at 8:00am . . . Today is effectively my last day." *Id.* at

1.[3]

---

[2] This exhibit is erroneously marked as "Exhibit 1" in Moore's sworn declaration. Since Exhibit
1 already exists, this exhibit is referred to as Exhibit 12 based on the filing chronology.
[3] Plaintiff now disputes his resignation, claiming he was constructively discharged. Resp. 2, ECF
35. In his EEOC Complaint, plaintiff stated "I did not resign from my position but was listed as
having resigned and learned that I was not an employee on 11/03/2023." Moore Decl., Ex. 13 at
1, ECF 34-13. In his deposition, plaintiff also testified that he did not recall resigning from his
position. Jackson Dep. 169, ECF 34-1. He stated that "[he] never submitted a[n] e-mail stating

### III.    Title VII and ADEA Discrimination Claim

Employees suffer intentional discrimination, also known as "disparate treatment," when they are "singled out and treated less favorably than others similarly situated" because of their protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). "Where direct evidence is unavailable, plaintiffs can, and frequently do, rely on the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 ... (1973), as a way of channeling inquiry into the available circumstantial evidence." *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022).

The *McDonnell Douglas* framework has three steps. First, the employee must establish a *prima facie* case of discrimination. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). "If the plaintiff establishes a prima facie case, the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.* If the employer does so, the plaintiff must then show that the employer's reason is pretextual. *Id.* "A plaintiff alleging employment discrimination need produce very little evidence in order to overcome an employer's motion for summary judgment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citation and quotation marks omitted). "This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." *Id.* "In evaluating motions for summary judgment in the context of employment discrimination, [the Ninth Circuit has] emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove

that [he] resigned that [he] recall[s] of." *Id.* But there is no genuine issue of material fact about whether plaintiff resigned, as he has provided no evidence beyond allegations to prove he was otherwise terminated.

without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1112 (9th Cir. 2004).

The Ninth Circuit applies the same burden-shifting evidentiary framework of *McDonnell Douglas* to motions for summary judgment on ADEA claims. *Shelley v. Geren*, 666 F.3d 599, 607 (2012).

### A.    Prima Facie Case

To establish a prima facie case of discrimination, plaintiff must show that (1) he belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees who were not members of the protected class were treated more favorably, or "other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 691 (9th Cir. 2017). The proof necessary to establish a prima facie case for Title VII at summary judgment is "minimal" and need not be based on a preponderance of the evidence. *Villiarimo*, 281 F.3d at 1062). However, "conclusory statements without factual support are insufficient[.]" *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

The first and second elements are uncontested. Plaintiff, a Black man who was fifty-one years old at the time, is a member of a protected class. Defendant also concedes the second element. Mot. Summ. J. 21, ECF 32. Defendant contends, however, that plaintiff did not suffer an adverse employment action and there is no evidence that similarly situated employees were treated more favorably. *See id.* at 21-25; Reply 2-7, ECF 36.

An adverse employment action is "one that materially affects the compensation, terms, conditions, or privileges of employment." *Davis*, 520 F.3d at 1089 (simplified). "[O]nly 'non-

trivial' employment actions, such as 'termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for a promotion' qualify as adverse employment actions." *Knight v. Brown*, 797 F. Supp. 2d 1107, 1125 (W.D. Wash. 2011), *aff'd,* 485 F. App'x 183 (9th Cir. 2012) (quoting *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000)).

Plaintiff alleges defendant subjected him to several adverse employment actions: denial of telework, requirement to leave his office door open, assignment of a caseload, delay and deficiencies in training, placement on a Performance Improvement Plan (PIP), and constructive discharge.[4] *See generally* Compl., Ex. 5, ECF 1-5.

As a threshold matter, the first two actions—denying telework and forcing plaintiff to leave his office door open—do not constitute adverse employment actions because neither materially affected plaintiff's compensation, terms, conditions, or privileges of employment. *See, e.g., Matthews v. City of Tempe*, No. 2:22-CV-00407-SPL, 2023 WL 2072497, at *5 (D. Ariz. Feb. 17, 2023) (finding no cases "in which a court found the denial of telecommuting privileges to constitute an adverse employment action").

Plaintiff, however, has established that defendant's assignment of a caseload to him constitutes an adverse action. The record confirms that SCJMs generally do not carry a caseload.

---

[4] Plaintiff alleges more than a dozen situations as adverse employment actions, including delays and deficiencies in onboarding and training; differential treatment regarding open door and telework policies, and firearms qualification; gaslighting; a hostile work environment, such as comments on clothing, passive-aggressive remarks, and claims that the division was a "white supremacist organization"; delayed badge issuance; burdensome caseloads hindering performance; placement on a PIP; age-related comments by a supervisor; undermining his supervisory authority; premature negative assessment of certification likelihood; and constructive discharge. In its motion, defendant has characterized these allegations into six categories. *See* Mot. Summ. J. 22-25, ECF 32. As plaintiff does not dispute these categorizations in his response, the court adopts these six categories as the alleged adverse employment actions and analyzes them accordingly.

Tynan Decl. ¶ 13, ECF 33. Thus, assigning a caseload was an additional work responsibility. *See Davis*, 520 F.3d at 1089 (holding that "assigning more, or more burdensome, work responsibilities, is an adverse employment action").

Plaintiff must then present evidence that similarly situated employees who were not members of the protected class were treated more favorably. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (citing *Wall v. Nat'l R.R. Passenger Corp.*, 718 F.2d 906, 909 (9th Cir. 1983)). Employees need not be "identical; they must simply be similar in all material respects." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) (simplified). While there is no large pool of comparison of other similarly situated individuals, defendant admits that another SCJM who was in a similar position as plaintiff "did not have an assigned caseload." Tynan Decl. ¶ 13, ECF 33. Accordingly, plaintiff has established a prima facie case that he suffered an adverse action by being assigned a caseload.

Plaintiff also argues that he "was denied training opportunities" and that he "was not afforded the same scheduled training opportunities as other trainees[.]" Resp. 22-23, ECF 35. He specifically highlights delays in his firearm certification and claims of discrimination in firearm training. Jackson Dep. 84-85, 87, ECF 34-1. Training was critical for plaintiff, as he needed it to complete his field training manual within eighteen months of starting his role. Plaintiff expressed concerns to Tynan that he needed more training. Tynan Decl. ¶ 15, ECF 33. In his performance evaluation, plaintiff expressed that he would "like to receive adequate and timely training to ensure that [he is] able to fulfill [his] work responsibilities as a new [SCJM.]" Pl.'s Resp., Ex. 2 at 2, ECF 35-2.

Tynan concedes that she "did not have a structured training program for [plaintiff]." Tynan Decl. ¶ 11, ECF 33. However, she described that plaintiff "was assigned to trainers[,] which has been typical for our department." *Id.* The record shows that plaintiff was assigned to an SCJM who acted as an unofficial trainer. *Id.* ¶ 12; Jackson Dep. 25, ECF 34-1. In July 2023, Tynan also sent an email to other SCJMs requesting that they assist in training and coaching plaintiff. Moore Decl., Ex. 10 at 1, ECF 34-10. Eventually, Tynan assigned a specific SCJM for every module that plaintiff needed to be complete. Pl.'s Resp., Ex. 24, ECF 35-24.

Plaintiff has failed to establish a prima facie case based on this alleged adverse action because he has presented no evidence that other similarly situated employees were treated more favorably. For instance, although plaintiff claims that females received preferential treatment in their firearm training (Jackson Dep. 87, ECF 34-1), nothing in the record supports this allegation. Moreover, plaintiff admits he does not know whether others were treated any differently. In his deposition, he mentions two other SCJMs as being similarly situated because they "all came from [the] juvenile [division]." Jackson Dep. 75, ECF 34-1. But when asked whether those individuals had their field training manuals signed off by Tynan, plaintiff conceded "I have no idea." *Id.* at 77. When asked if he was aware of any other individual supervised by Tynan who needed their training completed, plaintiff said "No." *Id.* As there is nothing in the record reflecting that similarly situated plaintiffs received better training, plaintiff has failed to establish a prima facie case that the lack of structured training constitutes an adverse employment action.

Plaintiff also fails to show that being placed on a PIP was an adverse employment action. The Ninth Circuit and district courts in this circuit have made clear that a PIP is not an adverse employment action if it does not materially impact the plaintiff's terms of employment. *See James v. C-Tran*, 130 F. App'x 156, 157 (9th Cir. 2005) (noting that a PIP is "non-disciplinary

training that did not materially impact [the plaintiff's] compensation, terms, conditions, or privileges of employment"); *Jackson v. City of Yachats*, No. 6:23-CV-00690-AP, 2025 WL 3524372, at *16 (D. Or. Dec. 9, 2025) (holding that "[a] non-disciplinary work plan that did not materially change [the plaintiff's] terms of employment is not an adverse action."); *E.E.O.C. v. Evergreen All. Golf Ltd., LP*, No. 2:11-CV-00662-JAT, 2013 WL 4478870, at *10 (D. Ariz. Aug. 21, 2013) (same).

The record does not show that the PIP impacted plaintiff's compensation, terms, conditions, or privileges of employment. The PIP did not add any new requirements; instead, it was initiated to ensure plaintiff met the necessary requirements to be certified for his position. *See* Pl.'s Resp., Ex. 23 at 1, ECF 35-23. When Tynan met with HR to discuss the PIP, she proposed changes such as adding checkboxes so plaintiff could mark off the tasks he completed. Suppl. Tynan Decl. ¶ 8, ECF 37. Accordingly, the PIP was not an adverse employment action.

Lastly, defendant fails to establish a prima facie case that he was constructively discharged. Constructive discharge occurs "when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job[.]" *Brooks*, 229 F.3d at 930 (internal quotation marks omitted). To establish that he was constructively discharged, plaintiff must at least show some aggravating factors, such as a continuous pattern of discriminatory treatment. *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1412 (9th Cir.1996); *see also Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418–19 (9th Cir.1988) (conclusory allegations of discrimination are insufficient to avoid summary judgment).

In his complaint, plaintiff describes what he contends was a hostile work environment, including being gaslighted, having his supervisory authority undermined, waiting five months to

receive his badge, enduring passive-aggressive "jokes," and hearing that the division was a "white supremacist organization." Compl., Ex. 5 at 3-5, ECF 1-5. Also, plaintiff alleges there was a "a systematic effort by Jamie Tynan and senior leadership to allow [his] time lines for DPSST certification to lapse; that [he] was evaluated more harshly and subjectively pertaining to his job performance and learning ability . . . [and] that at the 11 month mark in [p]laintiff's tenure, [Tynan] informed human resource liaison that [he] is not likely to pass certification requirements[.]" Resp. 23, ECF 35.

Nothing in the record provides factual support for these allegations. *See Kunz v. Smith's Food & Drug Centers, Inc.,* No. 2:09-CV-01645-GMS, 2011 WL 995895, at *4 (D. Ariz. Mar. 21, 2011), *aff'd*, 497 F. App'x 746 (9th Cir. 2012) (holding that a plaintiff's uncorroborated and self-serving testimony was insufficient to establish a continuous pattern of discriminatory treatment). For instance, the record contains no evidence of harsh evaluations; rather, the performance evaluations show that Tynan checked in with plaintiff and provided encouragement.[5] *See* Pl.'s Resp., Ex. 2, ECF 35-2; Moore Decl., Ex. 7 at 1, ECF 34-7. Even regarding the delay in receiving his badge, the record shows that Tynan facilitated obtaining it, rather than delaying it. *Id.*, Ex. 12, ECF 35-12. And there is no evidence that Tynan informed HR

---

[5] For example, Tynan wrote:
- "[James]has been a great addition to our east campus and continues to build relationship with his peers and work towards his state certifications." Pl.'s Resp., Ex. 2 at 1, ECF 25-2.
- "James has good insight into the core competencies for the department. His transition to ASD has provided him numerous opportunities to demonstrate his skills here." *Id*.
- "James and I came up with a plan to ensure that he has access to timely and adequate training." *Id.* at 2.
- "Glad to hear that you are still applying for additional leadership opportunities. Remember that I and your team want to support these efforts. Don't hesitate to share and seek out the support in these leadership opportunities." Moore Decl., Ex. 7, ECF 34-7.

11 – OPINION AND ORDER

that plaintiff was not likely to meet his certification requirements. Instead, when another manager questioned whether plaintiff could complete all of the required training on time, Tynan responded, "[t]his plan will help us get there and if it does not work out, it will be due to an inability to get it [versus] us not providing the support he needs." *Id.*, Ex. 23 at 4, ECF 35-23. As plaintiff has failed to provide evidence of intolerable and discriminatory working conditions, the constructive discharge claim fails.

Plaintiff further claims that, on the day before he resigned, Scroggin called him and "yelled at, bullied, blamed, pressured and intimidated [him]." Pl.'s Resp. 24, ECF 35. During his deposition, plaintiff testified that, before he left employment, Scroggin "called me . . . and blamed me for the upheaval at the office and told me I needed to fix it or else." Jackson Dep. 103, ECF 34-1. Plaintiff claims Scroggin seemed "pretty upset . . . like he wanted to intimidate" plaintiff, "yelled" and "was aggressive in his tone," and "confronted" plaintiff when he said he was taking a sick day. *Id.* at 104. Such "[i]solated offensive remarks" are not sufficient to establish a hostile work environment. *Denning v. Cty. of Washoe*, 799 F. App'x 547, 548 (9th Cir. 2020) (holding that, although a reasonable jury could conclude that plaintiff was "mistreated" by her supervisor on the basis of her disability, the conduct fell short of the "extreme" behavior required for a hostile work environment claim); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) ("Viewing the evidence in the light most favorable to Manatt, we conclude that the conduct of Manatt's co-workers and supervisor—while offensive and inappropriate—did not so pollute the workplace that it altered the conditions of her employment."); *Nurriddin v. Goldin,* 382 F. Supp. 2d 79, 107 (D.D.C. 2005) (observing "many bosses are harsh, unjust, and rude," but the federal court is not a "court of personnel appeals"); *Smith v. Naples Cmty. Hosp., Inc.*, 433 F. App'x 797, 800 (11th Cir. 2011) (holding that "[m]uch

12 – OPINION AND ORDER

of the conduct of which Smith complained concern[ed] annoyances and communication issues that did not come close to creating a hostile work environment").

In sum, plaintiff has established a prima facie case as to only one adverse action: that he was required to carry a caseload, a work responsibility that was not generally assigned to SCJMs.

### B.    Legitimate, Nondiscriminatory Reasons

Given plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. *See Villiarimo*, 281 F.3d at 1062. Defendant has provided a legitimate, nondiscriminatory reason for assigning plaintiff a caseload. Tynan explains that a small caseload was assigned to plaintiff at the suggestion of the SCJM who was training plaintiff. Tynan Decl. ¶ 13. "The small caseload was intended to help [plaintiff] become more familiar with the role and job duties of parole and probation officers – those whom he was supervising." *Id.*

### C.    Pretext

The burden then shifts back to plaintiff to show that defendant's proffered reasons were a pretext for discrimination. "A plaintiff can prove pretext in multiple ways, either: (1) directly, by showing that unlawful discrimination more likely [than not] motivated the employer; (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable; or via a combination of these two kinds of evidence." *Opara v. Yellen*, 57 F.4th 709, 723 (9th Cir. 2023) (alteration in original, simplified) (citing *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000)). "Under any approach, generally, very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive." *Id.* (simplified) (citing *McGinest*, 360 F.3d at 1124). But the Ninth Circuit has held that, "when the plaintiff relies on circumstantial evidence, that

13 – OPINION AND ORDER

evidence must be specific and substantial[.]" *Coghlan v. Am. Seafoods Co. LLC,* 413 F.3d 1090, 1095 (9th Cir. 2005) (internal quotation marks omitted). That requirement is "tempered" by the "observation that a plaintiff's burden to raise a triable issue of pretext is 'hardly an onerous one.'" *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011) (citations omitted).

Plaintiff has not produced any direct or circumstantial evidence to show that defendant's reason for assigning him a caseload is pretextual. When plaintiff was asked why Tynan might have had him carry a caseload, he claimed it was to "create a barrier or make a difficult situation already more difficult. Just [to] create another hurdle for me to go over[.]" Jackson Dep. 78, ECF 34-1. He added "[t]here's a bias against juvenile managers coming over to parole and probation." *Id.* But, aside from this assertion, plaintiff has produced no evidence to show that discrimination was defendant's motivation. Nor is there anything in the record to question defendant's proffered explanation. Plaintiff admits it was his SCJM trainer who suggested that he be assigned a caseload, and he states that this trainer never discriminated against him. Jackson Dep. 78, ECF 34-1. Accordingly, even viewing the evidence in the light most favorable to plaintiff, he has failed to meet his burden of proving that defendant's reasoning for assigning him a caseload was pretextual.

As plaintiff fails to satisfy the burden-shifting framework, his Title VII and ADEA discrimination claims fail.

## IV.     Title VII and ADEA Retaliation Claim

To establish a prima facie case of retaliation under Title VII or ADEA, plaintiff must show that (1) he was engaged in a protected activity, (2) he suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse

14 – OPINION AND ORDER

employment decision. *Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986); *Hashimoto v. Dalton,* 118 F.3d 671, 675 n. 1 (9th Cir.1997) (noting that "the ADEA anti-retaliation provision is parallel to the anti-retaliation provision contained in Title VII, and that cases interpreting the latter provision are frequently relied upon in interpreting the former") (internal quotation marks omitted). Plaintiff's retaliation claims are subject to the same burden-shifting framework as the disparate treatment claims. *Tornabene v. Nw. Permanente, P.C.*, 156 F. Supp. 3d 1234, 1248 (D. Or. 2015).

"An adverse employment action is any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Poland v. Chertoff,* 494 F.3d 1174, 1180 (9th Cir. 2007) (internal quotation marks omitted). To establish causation, plaintiff must show that "engaging in the protected activity was one of the reasons for [the adverse employment decision] and that but for such activity he would not have [suffered it]." *Villiarimo*, 281 F.3d at 1065.

Defendant concedes that plaintiff engaged in protected activities when he emailed HR requesting a change in supervision on August 27, 2023, and when he submitted a complaint to the CIU on October 26, 2023. Mot. Summ. J. 26, ECF 32; Reply 7, ECF 36. For purposes of this retaliation claim, defendant also concedes that placing plaintiff on a PIP on November 1, 2023, was an adverse employment action. Reply 8, ECF 36; *see Annenberg v. Clark Cnty. Sch. Dist.*, 818 F. App'x 674, 676–77 (9th Cir. 2020) (holding that an action may not be adverse for a discrimination claim but may be for a retaliation claim if it would deter a reasonable employee from engaging in protected activity).

Yet there is no causal link between the complaints plaintiff made to HR and CIU and Tynan's decision to place plaintiff on a PIP because Tynan was unaware of those complaints.

15 – OPINION AND ORDER

First, the record shows Tynan never learned about the HR complaint made on August 27, 2003. Tynan Decl. ¶ 24, ECF 33. After plaintiff made the complaint, Shawntia Otero, the Senior HR Business Partner, asked him if she could provide Scroggin with an overview of his concerns. Moore Decl., Ex. 11 at 9, ECF 34-11. Plaintiff declined. *Id.* Otero then asked "if [he] would be interested in a [f]acilitated [c]onversation with [Tynan] in an effort for the two of you to sit down and discuss some of your concerns[.]" Pl.'s Resp., Ex. 1 at 8, ECF 35-1. Plaintiff did not seem open to this option either, so Otero responded, "I am taking this to mean you are not interested in a facilitated conversation." *Id.* at 9. After that correspondence, Otero never notified Tynan or Scroggin about plaintiff's complaints. Moore Decl., Ex. 2 at 39, ECF 34-21; *see also id.*, Ex. 11 at 7, ECF 34-11 (reflecting that, within HR, the Human Resources Manager asked Otero, "Did you talk to [Scroggin] about this at all?" and Otero responded, "I did not.").

Second, the record shows that Tynan did not know about the CIU complaint before she placed plaintiff on a PIP. Plaintiff submitted the CIU complaint on October 26, 2023. ECF 35-6. But Tynan had decided to place plaintiff on a PIP three days earlier, on October 23, 2023. Suppl. Tynan Decl. ¶ 6, ECF 37. On that date, she scheduled a meeting with HR for October 27, 2023, to discuss the PIP plan. *Id.*, Ex. 1, ECF 37-1.

In sum, plaintiff has failed to show a causal link between his complaints and the adverse employment decision. Although plaintiff was placed on a PIP after making complaints to HR and CIU, the record contains no evidence that it was because of his complaints. Accordingly, plaintiff's Title VII and ADEA retaliation claims also fail.

//

//

//

16 – OPINION AND ORDER

**ORDER**

Defendants' Motion for Summary Judgment (ECF 32) is granted and this case is

dismissed with prejudice.

IT IS SO ORDERED.

DATED June 9, 2026.


<u>     /s/ Youlee Yim You     </u>
Youlee Yim You
United States Magistrate Judge

17 – OPINION AND ORDER